LADIES' BENEVOLENT SOCIETY No. 2, OF EDGEFIELD, *v.* BENEVOLENT SOCIETY No. 2, OF EDGEFIELD.

### October Term, 1875.

BENEVOLENT ASSOCIATIONS — SECESSION OF MEMBERS — RIGHTS OF PROPERTY. — Where two benevolent societies, one of males and the other of females, having separate organizations but the same objects, united in purchasing a cemetery, each society contributing a moiety of the purchase-money, and for a time mutually participating in the use and profit

of the property, although the title was taken to the officers of one of them, a subsequent going over of a majority of the members of the other society to that one will not deprive such other society of its rights of property resulting from the payment of half the price, and the same will be declared and enforced by decree of this court.

*G. B. Guild*, for complainant.
*G. J. Stubblefield* and *E. H. East*, for defendant.

THE CHANCELLOR: — The bill is filed to secure, upon the ground of contract and resulting trust, an undivided interest in a small tract of land alleged to have been purchased with the joint funds of the two litigant societies, as a graveyard within which to bury the deceased members of both. When the bill was originally filed, I granted an injunction inhibiting the defendant from interfering with such lawful use by the complainant of the cemetery as it had previously enjoyed. I afterwards overruled a demurrer, because I thought there was equity in the bill. And subsequently I refused to dissolve the injunction, upon the coming in of the answer, because, while its assertions fully met the equity of the bill, its facts did not, leaving the rights of the parties, even upon the showing of the answer, in grave doubt. 2 Tenn. Ch. 77. Upon the hearing of the cause, recently, on its merits, precisely the same difficulty was suggested by the evidence. The witnesses on each side were very positive in their assertions of opinion which were directly in conflict, while, in the main, they all agreed upon the same state of facts. It is obvious, under such circumstances, that the opinions are entitled to little or no weight. The duty of the court is carefully to scrutinize the facts, and from them form its own opinions. Both sets of witnesses, if they agree upon the facts, and only disagree in their inferences, are probably honest, and the case may be decided against either side without any imputation on its character for integrity and truthfulness.

The substance of the bill is that there were two societies

organized by the colored citizens of Edgefield for the same benevolent purposes, namely, to aid the destitute and needy of their race, to administer to the sick, and bury the dead. One of these societies was composed of colored females, the other of the colored males. That, while one in object, they were separate and distinct in organization, having different presidents, secretaries, and treasurers; that the cemetery in dispute was bought in common, each society paying one-half of the purchase-money; that the defendant society recently undertook to break up the complainant society by merging the two treasuries into one; and that a portion of complainant's members went over to the defendant society, while the residue kept up the organization, and procured a charter of incorporation through this court to enable them to assert their rights.

The bill is based upon two other averments of facts, which were not sustained by the evidence. One is, that at the time of the alleged disagreement the two societies, although meeting in the same room, met always at different hours; and that there was an express contract that the title to the cemetery should be taken to the two societies. The weight of evidence is that the two societies met, at the period mentioned, in the same room, and at the same hour, though it seems the collections of the females were made at a different time from those of the males; and the evidence does not establish clearly that there was an independent contract that the title to the cemetery should be made to both societies. Unless, therefore, the complainant can show that it had a separate existence, notwithstanding the fact of its meeting with the defendant, and can, moreover, satisfactorily prove the payment of an aliquot part of the purchase-money for the cemetery, so as to raise a resulting trust, it will fail in its case. The very fact, moreover, that they have made such material assertions of fact, and failed to establish them, tends to weaken their position.

The proof on both sides shows that as early as 1866

there were two separate societies in Edgefield organized for the same purposes, one composed of males, the other of females, and holding their meetings at different places. Afterwards they met at the same place, — Payne's Chapel, — but on different days.   Subsequently, as an economical arrangement, they agreed, at the solicitation of defendant, through its president, as he himself says in his deposition, to meet in the same hall at the same hour.   All the witnesses agree that, although they thus met together, the female society had its own president, secretary, and treasurer, the president and treasurer being women, but the secretary being a male, a member of the other society, selected by the women to perform the duties of secretary, which consisted, it seems, in reading the constitution and by-laws and calling the roll.   Thus far the facts are admitted by all parties.   But the question not definitely determined by these facts remains, Was the female organization independent of, or subordinate to and only a part of, the defendant's organization?   One would suppose that the fact could readily have been shown, if it were the one way or the other.   But the evidence of the defendant's own witnesses, — and I propose to look principally to them, because I think the facts deposed to by them are in accord with the evidence on the other side, — leaves the point in singular obscurity.

Neither of these societies had any charter of incorporation at first.   They were both voluntary associations, with a constitution and by-laws of their own adoption.   On March 14, 1868, the Legislature incorporated Adam Young and others, under the name of the Nashville Colored Benevolent Society, for the same objects as the objects of these Edgefield societies, with power to establish branches ; and in October or November, 1868, this new corporation did organize a branch in Edgefield, the defendant in this case. Adam Young, the head man, it seems, of the Nashville society, and his associate in this work of organization,

state that at this meeting both males and females were present, and they express the opinion that both were embraced in the same charter.    If this were the fact, and both of these societies were being held together in the same room, at the same hour, though the time of this union of forces nowhere distinctly appears in this record, and were embraced in the branch charter as one body, it is clear the complainant would be entitled to no relief.    The opinions of the witnesses are expressed very positively, but the facts deposed to are too meagre to entitle their opinions to much weight.    The subsequent facts are utterly irreconcilable with such a conclusion.    Let us commence our investigation with an abstract of what the answer says on this subject.

The answer says that the defendant was organized under a charter from the mother society, and a body of ladies were united together for the purpose of assisting each other, without any charter, and, some five years since (which would be 1869), "united with respondents under their charter (it being read to them at the time), and have been working under their jurisdiction from that time to the filing of complainant's bill."    This statement of the answer, it will be noticed, admits that the defendant received its charter as a separate body, the females being still a separate body without a charter.    If this be true, — and for the purposes of this suit it cannot be disputed, — the witnesses Young and Bell are simply mistaken in supposing that the females were chartered with the men.    The coming together of the two bodies was after the defendant received its charter. This fact is also shown by the evidence of the defendant's president, who says he became a member after the incorporation, and was elected president in 1870, and in his official capacity made to the complainant the proposition to meet the same night, on the ground that it would save expense.

The answer admits that the ladies did have what they

call a president, secretary, and treasurer, " so they might collect their dues of ladies, pay out to the sick, and act as regular officers ;" but, it adds, to report their actings and doings to respondent. The answer, it will be noticed, admits the original organization of the colored females of Edgefield as a separate body, and that they did have, after the junction claimed to have been made with defendant, a president, secretary, and treasurer of their own. It denies, however, that after the junction they had a distinct organization ; but this, by itself, is mere opinion. Do the facts establish its correctness?

The proof is positive, by defendant's own witnesses, that the females occupied, until the spring of 1874, the opposite side of the hall from the males ; had, says these witnesses, what they called a president, secretary, and treasurer of their own ; and collected their own dues, which were kept by their own treasurer, and could only be reached through that treasurer.

The defendant's proof, as well as the complainant's proof, is clear that these so-called officers were chosen by the females. The same proof shows that their proceedings were kept distinct ; and one of the witnesses, the defendant's president himself, says the dues were collected at a different time from those of the male society.

The evidence of the defendant further shows that, the original charter of the defendant having been mislaid, a committee was appointed to hunt it up ; that the committee failed to find it, and a new charter was framed, to be void, however, if the old one could be found. This new charter, which is filed, bears date January 23, 1874. Now, the record shows that, immediately after the receipt of this new charter, the defendant's president, at a meeting where both societies were present, took a vote, not of the whole society, but of the women, whether they should have two societies or one, and the women, according to the witnesses, voted to go with the men, and a majority of them did go

over to the side of the hall occupied by the men. After this vote, the proof is that the funds were kept together by one treasurer. The significant parts of this transaction are that it was a vote whether they should have one or two societies, and was a vote of the women alone. The incident is inexplicable upon the theory that the two sexes constituted then, and had for years, only one society. And, so far as I can see, this was the first and only attempt to unite the two societies.

The deed to the cemetery in controversy in this case was made January 8, 1872, to Robert Goodrich and eight others, " trustees of the Benevolent Society No. 2, of Edge-field," for $1,030.80. The secretary of the defendant, who is introduced as a witness for defendant, tells us that two bank-books were kept, one for the males and one for the females, and that the female treasurer checked for all money put in for the females, and the defendant's treasurer checked out for the males. He further tells us that he paid for the cem-etery, and drew out half the money from the female depart-ment, except the interest. · The other testimony in the cause shows that about one-half of the money was paid out of the funds collected from the females, and there is no evi-dence to the contrary. Such a payment, it is clear, would raise a resulting trust to the extent of the aliquot part of the purchase-money thus paid, if the female society was an independent organization.

The evidence showing that the two societies were not incorporated at one and the same time, there is not a parti-cle of proof to show a subsequent joint incorporation. The defendant's witnesses are, therefore, mistaken when they give it as their opinion that, merely because they met together, and, to some extent, acted together, they were one body.

I am of opinion that the two societies were, and have continued to be, and still are, separate and independent organizations, and entitled to the property in controversy in

equal moieties. If they had constituted one organization, no number of members, by seceding, could set up any right to the property. *Smith* v. *Smith*, 3 Desau. 557. So, on the other hand, being separate organizations, the subsequent union of a majority of the females with the male society would not deprive the female society of its rights of property. Whether the majority of members of a benevolent association, unincorporated, might not, by proper action, merge the association in another society incorporated for the same purpose, even against the wishes of the minority, is a question not raised by the issues in this cause.

I feel it is due to the members of both of these societies to add that the objects they have had in view are eminently praiseworthy, and they deserve credit for the sacrifices they have made in so good a cause. It is deeply to be regretted that any misunderstandings should have arisen to mar the harmony of their action. In union is strength — in division, weakness and anarchy. There is no reason why these societies should not come together under one organization. I think this litigation, and the previous steps which led to it, grew out of an honest mistake of facts, obscured by lapse of time and the absence of written agreements and written proceedings. Still, if the female colored citizens desire to keep up a separate society, there is nothing in the law, in this age of woman's rights, to say them nay. With the objects had in view, however, by their association, it seems to me to be a question of economy, and should be treated accordingly.

In view of the fact that a large number of the women went over to the male society, and are still members of it, I shall refuse any account for sales of lots to this date, and order the defendant to pay the costs, but with leave to reimburse itself for such costs out of any future sales. Subject to such reimbursement, the cemetery and its future sales shall be held to belong equally to the two parties. The injunction will be made perpetual, and title divested and vested in accordance with this opinion.